In the Matter of JOHN H. HENDRICK, an Attorney, Respondent.

First Department, April 11, 1930.

*Einar Chrystie*, for the petitioner.

*David Asch* of counsel [*Martin Conboy*, attorney], for the respondent.

DOWLING, P. J.   Respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court of the State of New York, First Department, on November 21, 1904.

The petition charges that respondent has been guilty of misconduct as an attorney at law in that after he agreed with the representatives of the Zurich Insurance Company to settle a claim of his client Joseph Johnson for personal injuries for the sum of $250 he instructed Elizabeth Brennan, a young woman employee in his office, to prepare and execute, or have someone in his office execute, a paper purporting to be a general release to the insurance company in exchange for a check for $250; that pursuant to respondent's instructions Miss Brennan prepared a general release, induced the respondent's office boy, Walter G. Sohan, seventeen years of age, to sign Johnson's name thereon, and filled out and signed the certificate of acknowledgment attached thereto in which she certified as notary public that Johnson had appeared before her and acknowledged the execution of the document; that thereafter she delivered the document to the Zurich Insurance Company and received in return a check for $250, which she gave to the respondent.   The insurance company delivered the check to Miss Brennan relying on the genuineness of the general release presented to it.

Johnson had not authorized the respondent to sign his name on a general release and the paper delivered to the company was worthless and a forgery.

After respondent answered, the matter was referred to an official referee to take proof of the charges set forth in the petition and to report the same with his opinion thereon. The referee has filed a report in which he finds that " the respondent has not been proven guilty of the charges." Respondent now moves to confirm the report.

It appears that respondent, in behalf of Joseph Johnson, brought an action against Smallwood & Co. to recover damages for personal injuries. The action proceeded to trial and while the trial was in progress it was agreed to settle Johnson's claim for $250. Thereafter Miss Brennan delivered to the representatives of the Zurich Insurance Company, which company had previously insured Smallwood & Co. against loss by reason of accidents of the character suffered by Johnson, the paper described in the petition, and received from the representatives of the insurance company a check for $250 drawn to the order of " Hendrick & Hendrick, attys." The day it was received this check was cashed in the bank where respondent had his account. The following day Johnson called on respondent for the purpose of receiving his share of the amount collected from the insurance company. A dispute arose as to who was to be responsible for the disbursements. Johnson left respondent's office and communicated with the insurance company and subsequently called at the company's office where he was shown the general release which had been presented by Miss Brennan as above described. Johnson informed the insurance company's representative that the signature on the document was not his signature. Accompanied by representatives of the insurance company, Johnson went to the district attorney's office and presented the matter to one of the assistant district attorneys. Miss Brennan was summoned. The statements of Johnson and Miss Brennan were reduced to writing. The assistant district attorney caused a criminal proceeding to be instituted against respondent in the Magistrate's Court of the City of New York. A hearing was held before a city magistrate and after Johnson's testimony had been taken the case was adjourned. Thereafter respondent paid Johnson all he claimed as his share of the money collected from the insurance company. On the adjourned date of the hearing in the Magistrate's Court Johnson failed to appear; he was a resident of New Jersey and could not be subpœnaed, and the proceeding was dropped. Thereafter this proceeding was instituted. Johnson refused to appear before the bar association and the

official referee, and finally his testimony was taken in New Jersey pursuant to commission issued by the court.

The respondent's position in this matter is that after he had agreed to settle Johnson's claim he was authorized by Johnson to execute a general release as his attorney in fact; that he delegated this authority to Miss Brennan over the telephone and that instead of following his instructions to execute the document as attorney in fact for Johnson she induced Sohan, the office boy, to sign Johnson's name on the document and filled out and signed the certificate of acknowledgment as notary public without respondent's knowledge or authority.

The testimony of Miss Brennan, now Mrs. Brophy, before the official referee is to the effect that during a conversation with the respondent on the telephone, in which she reported to him details of the office, she told him that among the telephone calls was one from Johnson; respondent said to her over the telephone, " Mr. Johnson wants his money. * * * Prepare and execute a general release for Mr. Johnson as attorney in fact. Mr. Johnson has given me authority to do this. And take it to the Insurance Company and get the money." This telephone conversation took place a few days after the settlement had been agreed upon. Mrs. Brophy testified to efforts to find a notary public, that finding none where they were accustomed to be, she asked the office boy to sign the release in Mr. Johnson's name and then she executed it as a notary public and brought it to the insurance company. There is testimony that respondent knew nothing of this. The testimony given by Mrs. Brophy before the official referee differs from that given by her before the assistant district attorney, in that in the district attorney's office she made no reference to respondent's direction to execute the release " as attorney in fact."

The proof in this matter as to what occurred at the time the settlement was agreed upon indicates that respondent was authorized by Johnson to do what was necessary to collect the money from the insurance company. The official referee states as his conclusion, " that Johnson gave respondent express authority to sign a general release."

The record herein shows that at no time had respondent concealed from his client the fact that he had the money, nor did he refuse to pay his client the amount due the latter; the only question between them was as to who should be responsible for the disbursements. Respondent's bank account was more than equal to any amount that could have been due Johnson during the period covered by the incidents described.

No one suffered injury as the result of the acts complained of

herein. That, of course, is not the controlling factor in a proceeding of this kind. (See *Matter of Hawes,* 169 App. Div. 644.) Respondent admitted that he had not acted properly in directing his employee, Miss Brennan, to execute the release. This method of transacting business was not in keeping with that amount of care which should characterize every act of a member of the bar. A general release is an important document and we think respondent's conduct in connection therewith merits more than mere censure. He should be suspended from practice for the period of one year, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

FINCH, McAVOY, MARTIN and O'MALLEY, JJ., concur.

Respondent suspended for one year.